```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- x
                                        :
In re: EPHEDRA PRODUCTS LIABILITY       :     04 MD 1598 (JSR)
LITIGATION.                             :
                                        :
--------------------------------------- x
PERTAINS TO ALL CASES


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- x
                                        :
In re: TL ADMINISTRATION CORPORATION,   :     Chapter 11 Case No.
et al. (f/k/a TWINLAB CORPORATION, et   :          03-15564
al.),                                   :
                                        :     (Jointly Administered)
            Debtors.                    :
                                        :
--------------------------------------- x     MEMORANDUM
```

JED S. RAKOFF, U.S.D.J.

By two summary orders entered on July 20, 2005, the Court sustained objections filed jointly by the Debtors and the Official Committee of Unsecured Creditors to six consumer class claims and thereby expunged all consumer class claims against the Debtors. The Orders indicated that a Memorandum setting forth the reasons for these determinations would issue in due course, and here it is.

Twin Laboratories Inc. (a/k/a Twinlab Corp. or Twinlabs, now the Debtors) was in the business of manufacturing and distributing herbal dietary supplements. At the time the Debtors filed their Chapter 11 petition, consumer class actions were pending against them in state and federal courts in connection with their marketing of ephedra supplements to consumers seeking weight loss, increased energy, or enhanced athletic performance, and the marketing of "steroid hormone products" as promoting muscle growth.

Aside from these class actions, there were pending against Debtors at the time of their bankruptcy filing in 2003 about 65 products liability cases claiming personal injury or wrongful death, and more have been filed since. Twinlabs went out of business in 2003 and sold all its assets for the benefit of creditors. A liquidating plan under Chapter 11 was accepted by a vote of the creditors in July 2005 and confirmed by a joint order of this Court and the Bankruptcy Court dated July 26, 2005. The plan extinguishes the equity interest and contemplates distributing about 20¢ on the dollar to general creditors and about 12¢ on the dollar to some 60 personal-injury and wrongful-death claimants whose claims were not covered by Twinlabs' liability insurance. Contributions by potentially liable non-debtors (mainly, the retailers who sold Twinlabs products) to a global settlement of the uninsured and under-insured personal-injury and wrongful-death claims brought the recovery of these claimants up to an estimated range of 49%-65% of the claims' value. *See* Debtors' Memorandum of Law in Support of Confirmation, at 41.

As to the pending class actions, the class claims in three such actions that had been transferred to this District were expunged without opposition. These were *Felts v. Twinlab Corp.* et al., No. 04 Civ. 10309; *McMorris v. Twinlab Corp.* et al., No. 05 Civ. 0427; and *Nagel v. Twinlab Corp.* et al., No. 04 Civ. 9802. However, the plaintiff in a fourth such transferred case, *Lackowski v. Twinlab*

*Corp.* et al., No. 04 Civ. 10308, as well as the plaintiff in a fifth class action, *Barr v. Twinlab Corp.*, which was pending in California state court but stayed by 11 U.S.C. § 362, challenged the proposed expungement.  In addition, the putative class representatives in a sixth case, also in state court, filed a class proof of claim and simultaneous adversary proceeding against the Debtors, demanding *inter alia* restitution of the purchase price and treble damages under the civil RICO statute.  *See Cirak* et al. *v. Twinlab Corp.*, Case No. 04-02770 (Bankr. S.D.N.Y, adversary-proceeding complaint dated March 1, 2004).  The individual Cirak plaintiffs also appeared to answer the Debtors' motions seeking expungement of the class claims.[1]

For a variety of reasons, discussed *infra*, the issue of whether the class claims in these three remaining class actions -- *Barr, Lackowski,* and *Cirak* -- should be allowed or expunged was not specifically presented to the Court until June 28, 2005, after the Debtors' plan had already been sent to the creditors for a vote pursuant to a disclosure statement approved jointly by this Court and the Bankruptcy Court on June 2, 2005.  After full briefing and oral argument, the Court, on July 20, 2005, expunged the claims.  It did so for two, independently sufficient reasons.

---

[1] Because of the close relation of these class actions to the ephedra products liability cases to be tried in the district court pursuant to 28 U.S.C § 157(b)(5), the Court withdrew the reference to Bankruptcy Court with respect to the ephedra consumer class claims through a series of orders beginning on November 29, 2004.  On May 10, 2005, the Court extended the withdrawal of reference to all consumer class claims regardless of whether the relevant product contained ephedra.  Case Management Order No. 13 ¶ 6.

3

First, the granting of class action claims at this late juncture would wholly disrupt and undercut the expeditious execution of the Plan of Reorganization.

By way of background, nothing in the Bankruptcy Code or Rules expressly permits a creditor to file a proof of claim not only for himself but also on behalf of all other creditors similarly situated. Indeed, prior to 1988, many courts had held that 11 U.S.C. § 501 provides an exclusive list of those who may file a representative claim and that class proofs of claims are invalid as a matter of law because class representatives are not listed in § 501. *See, e.g., In re Standard Metals Corp.,* 817 F.2d 625, 630-31 (10th Cir. 1987); *In re Johns-Manville Corp.*, 53 B.R. 346, 351-52 (Bankr. S.D.N.Y. 1984) (collecting cases). However, in *In re American Reserve Corp.,* 840 F.2d 487 (7th Cir. 1988), the Seventh Circuit held that class proofs of claim are not barred by § 501 but may be allowed in the discretion of the bankruptcy court. In exercising that discretion, the bankruptcy court first decides under Rule 9014 whether or not to apply Rule 23, Fed. R. Civ. P., to a "contested matter," *i.e.*, the purported class claim; if and only if the court decides to apply Rule 23, does it then determine whether the requirements of Rule 23 are satisfied.

*American Reserve* has been followed by a number of other circuits, but neither the Second Circuit nor the Supreme Court has taken up the issue. The approach approved in *American Reserve* has, however, been followed in this District by such cases as *In re*

4

*Chateaugay Corp.,* 104 B.R. 626 (S.D.N.Y. 1989) (employment discrimination class claim), *appeal dismissed,* 930 F.2d 245 (2d Cir.1991); *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365 (Bankr. S.D.N.Y. 1997) (consumer class claim); *In re Thomson McKinnon Securities, Inc.,* 141 B.R. 31 (Bkrptcy. S.D.N.Y. 1992) (class claim under state law for fraud in sale of real estate partnership interests); and *In re Thomson McKinnon Securities, Inc.,* 133 B.R. 39 (Bankr. S.D.N.Y. 1991) (securities fraud class claim).

The Court finds this line of S.D.N.Y. cases persuasive and adopts their view of the law. *Woodward*, a decision to expunge a consumer class claim authored by Bankruptcy Judge (now Chief Bankruptcy Judge) Stuart M. Bernstein, is especially relevant because the circumstances are quite similar to those here. These cases make clear that bankruptcy significantly changes the balance of factors to be considered in determining whether to allow a class action and that class certification may be "less desirable in bankruptcy than in ordinary civil litigation." *American Reserve*, 840 F.2d at 493. Even class actions that were certified prior to the filing for bankruptcy may, for this reason, be disallowed. *See, e.g., In re Zenith Laboratories, Inc.*, 104 B.R. 659, 664 (D.N.J. 1989).

More generally, these cases hold that Rule 23 may be invoked against the debtor only if the bankruptcy court first makes a discretionary ruling under Rule 9014 to apply Rule 23 to the proof of claim. Although the Bankruptcy Code and Rules give no express guidance for the court's exercise of this discretion, a pervasive

5

theme is avoiding undue delay in the administration of the case. It follows that a court sitting in bankruptcy may decline to apply Rule 23 if doing so would in Judge Bernstein's words, "gum up the works" of distributing the estate. *Woodward*, 205 B.R. at 376. For example, since class litigation is inherently more time-consuming than the expedited bankruptcy procedure for resolving contested matters, class litigation would have to be commenced at the earliest possible time to have a chance of being completed in the same time frame as the other matters that must be resolved before distributing the estate.

Here, the potential interference with timely distribution in itself presents sufficient grounds to expunge the class claims. The liquidating plan was already submitted for a vote of creditors before the Court was finally asked to decide whether or not to exercise its discretion under Rule 9014. Applying Rule 23 to the class claims now would initiate protracted litigation that might delay distribution of the estate for years. Pre-certification discovery would be needed for three putative class claims with three putative class attorneys, two of whom are competing to represent the same consumers. If the classes were then certified, notice to class members followed by discovery on the merits and the bankruptcy equivalent of a trial would further delay distribution. It is simply too late in the administration of this Chapter 11 case to ask the Court to apply Rule 23 to the class proofs of claim.

Although no waiver was involved, counsel for the class claimants bear primary responsibly for the "gumming up" by not affirmatively moving under Rule 9014(c) for class certification.

While the need for a Rule 9014(c) motion clearly follows from the cases cited above, counsel were apparently of the view that their class claim was not a "contested matter" (the precondition to invoking Rule 9014) since claims are "deemed allowed" in the absence of objection. 11 U.S.C. § 502(a). Reflecting this misunderstanding, Barr and Lackowski made only sporadic, and ineffective, attempts to move their class actions forward. Barr moved for relief from the automatic stay in February 2004 but consented to and sometimes requested various adjournments until May 2005. Lackowski promptly commenced an adversary proceeding mirroring his Michigan class action against the Debtors and moved in the Bankruptcy Court for class certification, but then asked to "defer all action on the adversary complaint case against Twinlab until determination by the MDL panel as to whether this case is to be included in an MDL." Although the Panel did not include it, Lackowski never revived the adversary proceeding and certification.

While counsel for Cirak also took some hesitant steps forward, *see infra,* neither Cirak nor any other purported class claimants moved under Rule 9014 to apply Rule 23 to their claims. Indeed, the question of whether the Court should exercise its discretion to apply or not apply Rule 23 was first raised in *Barr* and *Lackowski* by the Debtors and Creditors' Committees when these committees jointly objected to the ephedra consumer class claims on May 18, 2005. In *Cirak*, Rule 9014 was first invoked — again, by the Debtors and Creditors Committees — on June 20, 2005, after the plan had already been submitted for a vote.

7

If expungement were here based on a procedural default by the class claimants, the Court might well find the default excusable because the Code and Rules are so opaque as to the procedure governing class claims. But the Court grants expungement on a no-fault basis: regardless of how and why no application for the Court to apply Rule 23 was brought *sub judice* until after the plan had already been submitted to creditors, applying Rule 23 now would, as indicated, greatly and unduly delay distribution of the estate.

Before turning to the second, independent reason for expunging the claims, some additional arguments raised by Cirak's counsel with respect to the first ground must be considered.

For one thing, Cirak cites *In re The Charter Co.*, 876 F.2d 866, 874 (11th Cir. 1989) for the proposition that "the first opportunity a claimant has to move under Bankruptcy Rule 9014, to request application of Bankruptcy Rule 7023, occurs when an objection is made to a proof of claim. Prior to that time, invocation of Rule 23 procedures would not be ripe, because there is neither an adversary proceeding nor a contested matter." On this basis, *Charter* therefore held that a Rule 9014 motion was still timely two years into the bankruptcy. *Id*. at 874-75.[2] Such a construction of Rule 9014 would mean that a debtor and others with interests adverse to a

---

[2] *Charter* did not, however, apply Rule 23 to the class claim. The court concluded: "Because the bankruptcy judge ... did not reach the question of whether or not to apply Bankruptcy Rule 7023..., we ... remand the case to the bankruptcy court for the exercise of its discretion." 876 F.2d at 876-77. On remand, the bankruptcy court presumably retained discretion to decline to apply Rule 23 because applying it would unduly delay administration of the case.

8

class claim could prevent the claimant from asking the bankruptcy court to apply Rule 23 simply by withholding their objections until the eve of confirmation and then move to expunge the class claim on the grounds that applying Rule 23 would unduly delay distribution.

The Court disagrees with *Charter*'s view that an objection was necessary in order to have a "contested matter" triggering the court's discretion under Rule 9014. Although "contested matter" is not defined in the Code or text of the Rules, the Notes of the Advisory Committee to the 1983 amendment to Rule 9014 explain: "Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter." From the moment the Chapter 11 petition was filed, Cirak and the other class claimants had the right to move for class certification by virtue of 11 U.S.C. § 1109(b), which provides: "A party in interest, including ... a creditor, ... may raise and may appear and be heard on any issue in a case under this chapter." They could have requested class certification even before they filed their proofs of claim. If a party in interest asks the bankruptcy court to certify a class, the class claim becomes a "contested matter" *at least* as of the time that the request is opposed, and even before if opposition is known or reasonably foreseeable — in the words of the Advisory Committee, "whenever there

9

is an actual dispute."[3] Objection to the class proofs of claim was not a necessary prerequisite to a motion for class certification.

Next, Cirak seeks to rely on the fact that, in an adversary proceeding, the Court has no discretion to decline to apply Rule 23: the rule applies automatically pursuant to Bankruptcy Rules 7001 and 7023. Here, Cirak and Lackowski each filed adversary proceedings with a class action complaint, and Cirak argues that Rule 23 therefore automatically applies. If that were the law, by filing an adversary proceeding a claimant could short-circuit not only the exercise of the Court's discretion under Rule 9014 but also the entire claims process, which is designed to resolve disputes in an expedited manner rather than through litigation under the Federal Rules of Civil Procedure.

However, the *Cirak* complaint, when stripped of injunctive and declaratory demands that are meaningless in light of Twinlabs' liquidation, boils down to no more than a claim for money from the Debtors. Even Cirak's seemingly frivolous RICO claim comes down to this. In bankruptcy, "the only appropriate way to assert a claim against a debtor's estate is through the timely filing of a properly executed proof of claim" and not through an adversary proceeding. *In re Johns-Manville Corp.*, 53 B.R. 346, 354 (Bankr. S.D.N.Y. 1985). The filing of an adversary proceeding with a class action complaint does not alter the right of both the debtor and creditors who are not

---

[3]If the Debtors scheduled the class claims as "disputed" pursuant to Rule 3003(b)(1), they were "contested matters" from the time they were so scheduled.

parties to the adversary proceeding to interpose an objection to the class proof of claim and have it determined as "contested matter" subject to the Court's discretion to expunge the claim by declining to apply Rule 23.

Lastly, Cirak seeks to find support for his position in an order issued by the Bankruptcy Court (former Bankruptcy Judge Blackshear) on June 18, 2004, prior to this Court's withdrawal of the reference, which provided, *inter alia* that: "Plaintiffs shall ... file ... an amended Class Action Complaint; ... any objection by the Debtors to Plaintiffs' Proof of Claim" shall be filed "by December 30, 2004, with such objection being without prejudice to any right of the Debtors to amend such objection after December 30, 2004; ... the Adversary Proceeding and the Proof of Claim shall be administratively consolidated (the 'Consolidated Action');" and "discovery on the Consolidated Action is stayed until the earlier of the date the Debtors file an objection to Plaintiffs' Proof of Claim or December 30, 2004."

Cirak filed the amended complaint on July 27, 2004; on August 25, 2004, the Debtors, in lieu of an answer to the amended complaint, filed a motion to dismiss the amended (but still defective) RICO claim; on June 21, 2004, Cirak filed opposition papers; and on October 25, 2004, the parties to the Consolidated Action filed a joint motion to withdraw the reference to Bankruptcy Court as provided in 28 U.S.C. § 157(d).[4] Nothing more was done by any party

---

[4]The RICO dispute made granting of the motion to withdraw the reference mandatory under the second sentence of § 157(d)

11

in the Consolidated Action until the objections were filed on June
20, 2005. The Debtors did not file an objection denominated as such
by December 30, 2004, nor did they take the steps required by this
Court's Case Management Orders to bring the motion to dismiss before
the Court; Cirak, however, never moved under Rule 9014 to apply Rule
23 to his class claim nor initiated discovery as provided by Rule
26(f) (made applicable to adversary proceedings by Rule 7026). No
party to the joint motion to withdraw the reference put it on the
agenda of any monthly status conference by delivering courtesy copies
within seven days before the hearing as provided in the Case
Management Orders. This joint omission left jurisdiction over the
*Cirak* Consolidated Proceeding in limbo for more than six months.

Cirak argues that the Debtors' failure to file an objection
within the December 30 deadline forecloses their instant objection
and means that the class claim is "deemed allowed" pursuant to 11
U.S.C. § 502(a). The Debtors' counter-argument is twofold: first,
that their motion to dismiss the RICO claim, filed well before
December 30, should be construed as an objection for the purpose of
the June 18 Order (especially since the Order "administratively
consolidated" the proof of claim and adversary proceeding) and that
the June 18 Order expressly preserved the Debtors' right to amend an
objection after December 30, 2004; second, that the June 18 Order set
a deadline only for objection by the Debtors and that the instant

---

because "resolution of the proceeding require[d] consideration of
both title 11 and other laws of the United States regulating
organizations or activities affecting interstate commerce."

objection is made jointly by the Creditors' Committee, which has a coequal statutory right to object under § 502(a).

However one might parse this procedural morass, the fact remains that Cirak was able to move under Rule 9014 to apply Rule 23 at any time after the Chapter 11 petition was filed, but never did so. Meanwhile, the Debtors assets have been marshaled and liquidated, all other disputed claims have been resolved (including 60 claims of personal injury or wrongful death), the plan has been confirmed, and the estate is ready for distribution. Accordingly, as already indicated, a prudent exercise of the Court's discretion is to decline to apply Rule 23 at this late date because of the huge problems it would create for the prompt and orderly distribution of the estate.

Turning to the second, independent reason for expunging the class claims, the Court holds that, even if the class claimants had made a prompt Rule 9014 motion or were excused from so doing, and even if the Court had applied Rule 23, the Court would still deny class certification and would still expunge the class claims for failure to meet the requirements of Rule 23 for class certification.

In particular, since the claimants are seeking opt-out class actions, they would have to show, in order to satisfy Rule 23, that, among other things, "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3).[5] In *Lackowski*, the federal district court in Michigan

---

[5]Even though *Barr* was pending in state court where class certification was governed by California law, after the

13

had found this requirement satisfied and was affirmed by the Sixth Circuit. But that was before the bankruptcy, when the only "other available methods" for adjudication were individual civil actions possibly in different courts. A class action was then superior because it consolidated the adjudication of common issues and enabled the prosecution of small claims without each claimant's having to retain counsel and incur litigation expenses.

However, this superiority of the class action vanishes when the "other available method" is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost. In efficiency, bankruptcy is superior to a class action because in practice small claims are often "deemed allowed" under § 502(a) for want of objection, in which case discovery and fact-finding are avoided altogether. As for fairness, although the notice requirements of Rule 23 are superior for class members to the usual bankruptcy notice by publication, this shortcoming is easily remedied by a bankruptcy notice directed specifically at class members, either at the time of the original notice or thereafter by order extending the bar date for class members.

---

bankruptcy it could only proceed if it satisfied the requirements of Rule 23. Rule 23 permits three kinds of class actions: common-fund actions governed by Rule 23(b)(1), injunctive actions governed by (b)(2), and opt-out actions governed by (b)(3). A state class action asking the court to assume jurisdiction over all class members who fail to opt out must be expunged in bankruptcy if it fails to satisfy the requirements of Rule 23(b)(3). Insofar as the class claims seek injunctive relief against Twinlabs under Rule 23(b)(2), they are moot now that Twinlabs has gone out of business and existence.

Since superiority of the class actions is lost in bankruptcy, only compelling reasons for allowing a particular opt-out class claim can justify applying Rule 23. Barr argues that the deterrent effect of the California consumer protection statute is a compelling reason. That might be true in a reorganization where the company continues in business run by the owners and managers who had perpetrated a consumer fraud, or in a liquidation where some equity is returned to the former owners. Here, however, the company has been out of business since 2003, the owners' equity is wiped out, and the "managers have moved on to other jobs," *Woodward*, 205 B.R. at 376. Acknowledging the futility of *specific* deterrence, Barr argues that allowing her class action will deter *other* companies from committing a similar fraud. Although such *general* deterrence is a well-established purpose of criminal penalties for fraud, it is not a purpose of the compensatory remedy demanded by the claimants (restitution of the purchase price). Regarding their demands for punitive and treble damages (which might, by analogy to criminal penalties, have a purpose of general deterrence), in bankruptcy punitive damages and penalties are given a low priority of distribution so that general creditors are paid in full before any estate assets are used to pay penalties. *See* 11 U.S.C. §§ 726(a)(4) (distributions under Chapter 7) and 1129(a)(7)(ii) (making § 726 the minimum distribution for Chapter 11 plans); Debtors' Plan § 4.6. Under the Bankruptcy Code, general deterrence is not promoted at the

expense of creditors.  Whatever weight deterrence may have in a true reorganization, it has none in a liquidating plan like the one here.

Further still, allowing the consumer class actions would unreasonably waste an estate that was already grossly insufficient to pay the allowed claims of creditors who had filed timely individual proofs of claim.  The Debtors and Creditors Committee estimate that the average claim of class members would be $30, entitling each claimant to a distribution of about $4.50 (figures which Barr and Lackowski do not dispute; although Cirak argues that some consumers made repeated purchases of Twinlabs steroid hormones totaling a few hundred dollars each).  Presumably, each claimant would have to show some proof of purchase, such as the product bottle.[6]  Because the Debtor ceased marketing these products in 2003, many purchasers would no longer have such proof.  Those who did might well find the prospect of someday recovering $4.50 not worth the trouble of searching for the old bottle or store receipt and filing a proof of claim.  Claims of class members would likely be few and small.  The only real beneficiaries of applying Rule 23 would be the lawyers representing the class.  *Cf. Woodward*, 205 B.R. at 376-77.  The Court has discretion under Rule 9014 to find that the likely total benefit

---

[6]Theoretically, the Court could allow claims on the basis of an affidavit swearing from memory that the claimant had purchased a Twinlabs ephedra product.  Sometimes, however, memory must be presumed unreliable.  The *Lackowski* action, for example, is limited to a Twinlabs product called Metaboli*ft*, which was marketed in competition with Metaboli*fe*, the most widely distributed ephedra product made not by Twinlabs but by an unrelated competitor.  Yet another ephedra product called Metab-O-Lite was simultaneously marketed by a third unrelated company.

16

to class members would not justify the cost to the estate of defending a class action under Rule 23.

Accordingly, for each and all of the foregoing reasons, the Court issued its Orders of July 20, 2005 expunging all remaining consumer class claims.

                                                                         */s/ Jed S. Rakoff*
                                                   JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       August 8, 2005